10 99
09 398

## ALDRICH *vs.* WOODCOCK & Trustees.

Mortgagees of personal property, by agreement with the mortgager, took possession of portions of the property; used some of it; made sale of sufficient to pay their demands, some of which was sold at auction; and permitted part of it to go back into the possession of the debtor. Soon after they took possession, the plaintiff and other creditors caused them to be summoned as trustees; after which some of the property was attached by another creditor —*Held* that the trustees were chargeable for all the property which came into their possession, and were to be allowed to retain the amount of their debts, and their expenses in taking care of and making sale of the property; and that so much of it as was sold at auction was to be charged to them at the amount of the sales, there being nothing to show that it was not sold for its fair value.

FOREIGN ATTACHMENT. From the report of an auditor, appointed by agreement of the parties, it appeared that on the 25th of November, 1836, the principal defendant, Woodcock, executed a mortgage to Watkins and Newton, the trustees, of divers articles of personal property, among which were two horses and waggons, several lots of lumber at different places, some wood, two mortising machines, and other property in the shop occupied by Woodcock, in Swanzey; and a formal delivery of a horse and waggon was then made.

The mortgage was made to secure the sum of $600, due to Watkins; and the sum of $100 to Newton.

Woodcock then thought he should be able to continue business, but agreed that if he should not be, they might sell property sufficient to pay themselves.

The next day Woodcock failed, and the trustees, with his knowledge and assent, proceeded to use portions of the lumber, and of the wood, and to work in the shop before occupied by him, using the machine before mentioned. Watkins had been in his employ as a journeyman before that time, and appeared to be master, after Woodcock, continuing to work in the shop.

On the 28th of November this action and others were served on Watkins and Newton, as trustees.

On the 5th of December, with the assent of Woodcock,

they advertised, and on the 12th sold at auction, at the shop, the horses and waggons, a lot of hard ware, wood, window sash, lumber, &c., for the purpose of discharging the debts included in the mortgage ; and the proceeds of the sale were accounted for on the mortgage debt. Some of the creditors who had commenced trustee suits were present at the sale. Other articles were sold at different times.

Some time in March, 1837, Woodcock and Watkins being together, it was proposed to sell off the rest of the mortgaged property, and pay up the creditors who had trusteed, as far as it would go ; and some estimate was made of the amount of the property, but nothing appeared to have been done in consequence of this conversation.

On the 31st of March these creditors made a tender to Watkins of the amount of the demands secured by the mortgage, and demanded the property mortgaged. Watkins said he could not deliver the property, and that he had disposed of enough of it to satisfy his own and Newton's claim. Newton was not present when the tender was made.

The greater portion of the property not sold, or used, as before stated, remained in much the same situation as before the mortgage, (except that some of it was used by Woodcock) until it was attached by another creditor of Woodcock, in August, 1837.

*Bennet, & Wilson,* for the plaintiff.

*Edwards,* for the trustees.

Parker, C. J. The statute of December 12, 1832, made provision, that whenever personal property, not exempt from attachment, should be mortgaged, pledged, or subject to any lien created by law, the holder might be summoned as a trustee of the mortgager, &c. And if, upon disclosure, or otherwise, it should appear that the mortgager, &c., had any subsisting right to redeem, the court might order that on pay-

ment or tender of the debt, or performance of the condition, within such time as the court might order, the person summoned should deliver the property to the attaching officer, to be holden as if attached on mesne process, and on default that he should be charged as trustee. The trustee was entitled to receive of the officer his reasonable expenses occasioned by his being summoned. The act further provided for the attachment of property so mortgaged, &c., on mesne process or execution, if the creditor should first pay or tender to the mortgagee the amount for which the property was holden; and enacted that the officer who should sell any property taken by him under the provisions of the act, should apply the proceeds of the sale, after deducting fees and charges, to the payment of the sum paid or tendered to the mortgagee, pledgee, &c., and interest thereon, and the residue to the payment of the judgment of the plaintiff.

In the case before us it was agreed by the principal debtor, at the time of the execution of the mortgage, that if he was not able to continue business, the trustees might sell the property mortgaged, and pay themselves. They took possession of the property the next day, and this action was instituted against them soon after.

It is not important to enquire whether the service of the process would rightfully operate, by virtue of the statute, to prevent the trustees from making a sale, until the right of redemption had been ascertained by disclosure or otherwise; or whether the subsisting right to redeem, mentioned in the statute, refers to a right to redeem subsisting at the time of the service of the process, or at the time when the disclosure is made. The result in this case must be substantially the same, whatever may be the construction of the statute.

By the mortgage, and the possession taken under it, the trustees acquired the right to hold the property, and to have their debts satisfied, either by a sale of the property itself, or by the creditors who had instituted suits against them as

trustees. In the latter case the amount paid would be charged upon the property, and reimbursed out of the sales of it.

The trustees cannot be considered as having forfeited their right to payment, even if their disposition of the property has not been strictly correct. After the service of the process they proceeded to use some of the property, and soon after sold portions of it, for the purpose of paying their debts. As these debts were chargeable upon the property, and to be paid out of it, the creditors are not prejudiced by the course adopted, if the sales were fair and for a full price. Sales having been made to an amount sufficient to pay their debts, they must be charged for all the property that came to their hands, over and above that amount, deducting necessary charges. For the purpose of ascertaining this amount, the trustees must be held accountable for all property which was in their possession at the time of the service of the process, or which came to their hands afterwards, and are to be allowed to retain the amount of their debts, and their expenses in taking care and making sale of the property. This is an equitable process, and they must have been entitled to the expenses of taking care of the property, had it been retained until a disclosure. The expenses of the sale at auction cannot well have been greater than the cost of a sale by an officer, upon execution.

The property which they sold at auction is to be charged to them at the amount for which it was sold, there being nothing to show that it was not sold at its fair value, or that it brought less than it would if sold on execution.

If the trustees, having had the property in their possession at, or since the service of the writ, have permitted any portion of it to go into the hands of the debtor, they must be charged for its value. After the service of the process they had no right to return any of it to him, or to permit him to take it.

They are not to be charged for property included in the mortgage, but which in fact never came into their possession.

They are not answerable for its value, as trustees, unless they were the holders of it. 8 *N. H. Rep.* 273, *Greenleaf* vs. *Perrin & Trustee.*

The tender, made after the property had been sold by the trustees, does not seem to affect the case. Nor can the attachment by another creditor, of any portion of the property which came to their possession, avail to discharge them. Such attachment cannot be valid after they were summoned as trustees.

The report must be recommitted to the auditor, to enquire and ascertain for how much the trustees are chargeable, upon the principles above stated.